O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRO FABIO GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant.<br>_____ | NO. CV 13-3655-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

## INTRODUCTION

Plaintiff filed a Complaint on June 14, 2013, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On July 23, 2013 the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF Nos. 9, 10.) On March 11, 2014, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and awarding full benefits to plaintiff or, in the alternative, remanding the matter for further consideration and the completion of the sequential evaluation process. (Joint Stip. at 16.) The Commissioner requests that her decision be affirmed or, alternatively, if the Court finds that the

ALJ erred, that the case be remanded for further consideration. (*Id.* at 17.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was born on March 6, 1981, began receiving DIB in November 1994, when he was 13 years old. (*See* Administrative Record ("A.R.") 12, 168-69.) His benefits were continued after an age 18 redetermination but were terminated in November 2009, when plaintiff, who was then 28 years old, was incarcerated after a conviction for strong armed robbery. (*See id.* 12, 16, 169.) Plaintiff was released from state prison on June 27, 2010 following the completion of his two year sentence. (*Id.* 16.)

Plaintiff filed the instant application for a period of disability and DIB on April 21, 2010, two few months before his release from prison. (A.R. 12, 168, 171.) Plaintiff claims to have been disabled since November 1, 1994, the date his last application for DIB was granted, due to a learning disability, "adjustment disorder with features of depression and anxiety," and "mental issues, depression, and anxiety" (*Id.* 172). Plaintiff has past relevant work experience as an elementary school janitor (DOT 387.682-018), usher (DOT 344.677-014), and security guard (DOT 372.667-034). (*Id.* 72, 174.) He failed to hold any of his prior jobs for more than four months. (*See id.* 174.) At the time of his application, he was working as an in-home care attendant for his mother (DOT 354.377-014). (*Id.* 53, 72.)

After the Commissioner denied plaintiff's 2010 application, plaintiff requested a hearing. (A.R. 91.) On October 24, 2011, plaintiff, who was represented by counsel, appeared at a hearing before Administrative Law Judge Alexander Weir III. (*Id.* 49.) Vocational expert Sandra Trost ("VE") also testified. (*Id.* 45-57) On December 16, 2011, the ALJ denied plaintiff's claim. (*Id.* 12-20.) Plaintiff submitted additional evidence to the Appeals Council, but the Appeals Council denied plaintiff's request for review. (*Id.* 1-4.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his December 16, 2011 decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 21, 2010, the date he protectively filed for benefits. (A.R. 15.) The ALJ determined that plaintiff has the medically determinable impairments of "obesity, mental depression, and a learning disorder" but found that none of those impairments, either independently or in combination, constituted a severe impairment under step two of the sequential analysis. (*Id.* 15-20.) Accordingly, the ALJ found that plaintiff was not disabled. (*Id.* 20.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th Cir. 2008).

## DISCUSSION

Plaintiff's sole contention is that the ALJ erred at step two of the sequential analysis in finding that plaintiff does not have a severe impairment. (Joint Stip. at 4-8.) The regulations define a severe impairment as "[a]n impairment or combination of impairments . . . [that] significantly limit[s] your physical or mental ability to do basic work activities," which include, *inter alia*: "physical functions such as walking, standing, sitting, lifting . . . [;] capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521, 416.920(c), 416.921. "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted). If "an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential

evaluation should not end with the not severe evaluation step." *Id.* at 687 (citation and internal quotation marks omitted). "Step two, then, is a de minimis screening device [used] to dispose of groundless claims, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is *clearly established* by medical evidence." *Id.* (emphasis added) (citations and internal quotation marks omitted).

The ALJ based his decision at step two of the analysis primarily on the opinions of the examining psychiatrist, Lou Ellen Sherrill, Ph.D. and the reviewing psychiatrist, H. Amado, M.D.[1] (*See* A.R. 19.) Plaintiff contends, however, that the ALJ improperly ignored contradictory findings by both sources -- Dr. Sherill found that plaintiff's full scale IQ score was in the borderline range, and Dr. Amado indicated that plaintiff had a severe impairment -- and by an examining psychiatrist, Roger Pagel, Ph.D., who diagnosed plaintiff with, *inter alia*, a learning disorder and generalized anxiety disorder in 1999. (Joint Stip. at 5-6.) Plaintiff also submitted to the Appeals Council a mental impairment questionnaire filled out by his treating source, K. Lee, Ph.D., LCSW, which states that: Dr. Lee has monthly contact with plaintiff; plaintiff has moderate limitations in daily living and maintaining social functioning; plaintiff would likely have one or two episodes of deterioration or decompensation in a work or work-like setting;[2] and plaintiff would have difficulty working a regular full time job. (A.R. 346-49.) Dr. Lee diagnosed plaintiff with major

---

[1] The ALJ also cited the following reasons for finding that plaintiff did not have a severe impairment: (1) despite plaintiff's obesity, he conceded that he has no physical limitations and no other physical impairment; (2) by his own admission, plaintiff has no problem caring for his personal needs, can complete basic household chores and errands, and can engage in many activities that require a significant degree of concentration, such as playing video games, drawing, and driving a car; (3) plaintiff is generally able to get along well with family, friends, acquaintances, and neighbors, and has maintained a long-term relationship with his girlfriend, suggesting he has no significant limitation in his social functioning; (4) Dr. Robert Levin, a California Department of Corrections psychiatrist, predicted that plaintiff's auditory hallucinations and limitations in judgment and insight would subside once plaintiff was released from prison; (5) reports from the Parole Outpatient Clinic indicate that plaintiff did improve following his release, despite noncompliance with medication, because he ceased reporting perceptual distortions and exhibited fair reasoning, judgment, and insight; (6) plaintiff has experienced no episodes of decompensation of extended duration. (A.R. 18-19.)

[2] The questionnaire did not specify any period of time in which these episodes of deterioration or decompensation would occur. (*See generally* A.R. 349.)

depressive disorder with psychotic features and a learning disorder and assigned plaintiff a GAF score of 50, indicating serious symptoms or serious difficulties functioning. (*Id.* 346; *see also id.* 16 n.5 (explaining GAF scores).)

Defendant maintains that the assessments of plaintiff by Dr. Sherill and Dr. Amado provide substantial evidence for the ALJ's decision that plaintiff does not have a severe mental impairment. (Joint Stip. at 11.) Defendant also contends that "the four-page mental impairment questionnaire (from an unidentifiable source) that plaintiff submitted to the Appeals Council does not change the fact that substantial evidence supports the ALJ's decision. [That questionnaire is] unsupported by treatment notes and signed above a partially illegible stamp indicating it was completed by an LCSW (licensed clinical social worker)."[3] (Joint Stip. at 13.) Having carefully reviewed the record, the Court concludes that the absence of a severe impairment was not clearly established by substantial evidence. Instead, the record reflects conflicting medical evidence as to whether plaintiff's impairment was severe.

The Court looks first at the opinion of Dr. Sherill, the examining psychiatrist. Dr. Sherill, unlike the other medical sources, found that plaintiff does not suffer from a learning disorder. (*Compare* A.R. 254 (diagnosing plaintiff with "occupation problem; dysthymia; bereavement") *with* A.R. 259, 262 (Dr. Amado's opinion) *and* A.R. 336 (Dr. Pagel's opinion) *and* A.R. 346, 349 (Dr. Lee's opinion).) In line with that finding, Dr. Sherill opined that "[plaintiff] has adequate intelligence and memory in order to participate in the workforce." (A.R. 254.) Dr. Sherill based her opinion on the results of a battery of tests she conducted and on her observations of plaintiff during the examination. Specifically, plaintiff generally scored in the average to low average range, but his processing speed index and full scale IQ score were both borderline. (*See* A.R. 252-54.) Dr. Sherill also noted that plaintiff demonstrated adequate interpersonal skills and adequate

---

[3] Contrary to defendant's contention, the source of the questionnaire is plainly identified as "Dr. K. Lee, Ph.D., LCSW," the man plaintiff testified was his treating "doctor or something." (*See* A.R. 55-56, 349.)

receptive and expressive language abilities during the examination, exhibited no signs of a thought disturbance, and displayed both adequate commonsense judgment and a relatively good fund of information for the general population. (*Id.* 251-52, 254.)

In contrast to Dr. Sherill's opinion, Dr. Amado, the reviewing psychiatrist, opined that plaintiff suffers from a learning disability and anxiety and has low-average to borderline intellectual functioning. (A.R. 259, 262.) He further found that these impairments cause difficulties in plaintiff's ability to maintain social functioning as well as concentration, persistence, or pace. (*Id.* 266.) Although Dr. Amado concluded that plaintiff's impairments do not *significantly* limit plaintiff's functioning, (*id.* 269-70), he indicated that plaintiff does suffer from a severe impairment. (*Id.* 258 (checking the box "RFC Assessment Necessary" instead of the box "Impairment(s) Not Severe").)

Finally, Dr. K. Lee, Ph.D., LCSW, the only doctor with whom plaintiff had a treating relationship, found that plaintiff suffers from a "major depressive disorder with psychotic features" and a "learning disorder NOS." (A.R. 346.) Dr. Lee opined that these disorders: moderately limit plaintiff's activities of daily living and ability to maintain social functioning; frequently limit his ability to maintain concentration, persistence, or pace; and would cause episodes of deterioration or decompensation in a work or work-like setting "once or twice." (*Id.* 346, 349.) Although Dr. Lee's opinion was not presented to the ALJ, it was provided to the Appeals Council, and the Court must consider it in assessing whether there is substantial evidence in the record to support a determination that plaintiff's claim is groundless. *See* Brewes v. Comm'r of Soc. Sec., 682 F.3d 1157, 1159-60, 1162-63 (2012); *see also* Webb, 433 F.3d at 688 ("ALJ should have continued the sequential analysis beyond step two because there was no substantial evidence to show that [plaintiff's] claim was 'groundless.'" (citations omitted)).

Defendant urges the Court to disregard Dr. Lee's opinion because: it is only four-pages long; it is not accompanied by treatment notes supporting Dr. Lee's conclusions; and Dr. Lee is

a licensed clinical social worker with a Ph.D, not a medical doctor. (*See* Joint Stip. at 13.) With regard to defendant's first suggestion, the Court declines to overlook a treating source's opinion based solely on its brevity. Additionally, although Dr. Lee's opinion is not accompanied by treatment notes, Dr. Lee stated that his conclusions are consistent with his treatment notes, which he would be willing to send upon request and receipt of a consent form. (A.R. 347.) Accordingly, if Dr. Lee's treatment notes are necessary to assess his opinion about the severity of plaintiff's impairment, the ALJ would be required to request them.[4] *See* Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) ("The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" (citation omitted)); *see also* Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Further, the fact that Dr. Lee is a licensed social worker with a Ph.D., not a physician, does not bar the Court -- or the ALJ on remand -- from considering his opinion at step two of the sequential analysis.[5] (*See* Joint Stip. at 13.) Defendant is correct that a social worker is not a "medical source" whose opinion can be considered in deciding whether the claimant has an impairment.[6] Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010); *see* 20 C.F.R. § 404.1513(a), (d). However, an ALJ may consider a social worker's opinion in determining the severity of a claimant's impairment and whether the impairment affects the claimant's ability to work. 20 C.F.R. § 404.1513(d)-(e). Thus, Dr. Lee's opinion is evidence bearing on the ALJ's

---

[4] Nevertheless, plaintiff may be in a better position if, on remand, he takes responsibility for requesting these notes and submitting them to the ALJ.

[5] Dr. Lee's questionnaire suggests that he is not only a social worker but also a psychologist (*see* A.R. 349 (signed as "K. Lee PhD LCSW SupvPschSocWrk")) and, therefore, a medical source who *can* provide evidence to establish an intellectual disability, learning disability, or borderline intellectual functioning. 20 C.F.R. § 404.1513(a)(2).

[6] Again, it may be that, given his Ph.D., Dr. Lee is a licensed or certified psychologist. In that case, an ALJ could consider his opinion as evidence of whether plaintiff has an impairment. *See also* 20 C.F.R. 404.15153(a)(2) (identifying licensed or certified psychologists as medical sources who can provide evidence to establish an impairment).

determination under the second step of the sequential analysis, *i.e.*, whether the claimant's impairment is severe. Further, in view of Dr. Lee's opinion that plaintiff's impairment frequently limits his ability to maintain concentration, persistence, or pace and moderately limits his ability to maintain social functioning and perform activities of daily living, it is objective evidence of a severe impairment. *Cf.* Webb, 433 F.3d at 688 ("[T]here is not, in this instance, the total absence of objective evidence of severe medical impairment."). Accordingly, the medical evidence is in conflict, and, as a result, the Court cannot find that there is substantial evidence to support a finding that the medical evidence *clearly establishes* the absence of a severe impairment.

In reaching this conclusion, the Court does not express an opinion about the viability of plaintiff's application for benefits. However, plaintiff's borderline performance on some of Dr. Sherill's tests, the opinion of the reviewing psychiatrist that plaintiff has a severe impairment, and the opinion of plaintiff's treating source that, *inter alia*, plaintiff's impairment frequently limits his ability to maintain concentration, persistence, or pace and would cause one or two episodes of decompensation in a work-like setting is sufficient evidence of a severe impairment to pass the de minimis threshold of step two.[7] *See* Webb, 433 F.3d at 687. Accordingly, remand is required so that the ALJ may continue the sequential analysis beyond step two.[8] *See* McLeod v. Astrue,

---

[7] This medical evidence is also consistent with plaintiff's testimony and reports that he: has been unable to hold a job for more than a few months at a time (A.R. 59-61, 73); frequently forgets where he is (*id.* 206); would forget where to go and which rooms to clean when he was a school custodian (*id.* 59); cannot read books, including comic books (*id.* 58); could not do the basic written work required for employment as a school custodian and as a security guard (*id.* 59-60); and relies on his girlfriend to do his time sheets and manage his finances, because he cannot do simple math (*id.* 58, 64). (*See also* A.R. 18 ("[Plaintiff] reports that he experiences routine lapses in memory. For example, he testified that he has become lost while going out in the community.").)

[8] The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Under the "credit-as-true" rule, a district court should direct an immediate award of benefits when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1018 (9th Cir. Jul. 1, 2014); *see also* Harman, 211 F.3d at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, remand is warranted where, as

640 F.3d 881, 888 (9th Cir. 2011) (remand is appropriate where there is a substantial likelihood that the ALJ's consideration of additional evidence submitted to the Appeals Council could alter the ALJ's analysis).

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

DATED: January 16, 2015

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

---

here, there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See* Harman, 211 F.3d at 1179-81; *see also* Garrison, 2014 WL 3397218, at *21 (courts are required to remand for further proceedings when "even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled").